**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DONALD D. RIFE,

    *Plaintiff*,

v.                                  CASE NO. 10-CV-11175

COMMISSIONER OF          DISTRICT JUDGE BERNARD A FRIEDMAN
SOCIAL SECURITY,            MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits (DIB). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 14, 15.)

Plaintiff was 50 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 13 at 70, 597.) Plaintiff's employment history includes work as a builder and laborer. (Tr. at 93.) Plaintiff filed the instant claim January 2, 2003, alleging that he became unable to work on July 10, 1996. (Tr. at 70.) The claim was denied at the initial and administrative stages. Plaintiff requested a hearing, which was held by an administrative law judge ("ALJ"), who issued an unfavorable decision on May 26, 2005. (Tr. at 41-56.) The Appeals Council remanded the case for further consideration, i.e., for the ALJ to give further consideration to the maximum residual functional capacity; to evaluate Plaintiff's subjective complaints and provide a rationale, if necessary; to obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's impairments; and, if warranted, to obtain supplemental evidence from a vocational expert. (Tr. at 35-36.) On October 9, 2007, Plaintiff appeared before ALJ Regina Sobrino, who considered the application for benefits *de novo*. (Tr. at 597-603.) In a decision dated November 5, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 602-03.) Plaintiff requested a review of this decision on November 30, 2007. (Tr. at 6.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on February 25, 2010, when the Appeals Council denied Plaintiff's request for review. (Tr. at 6-8.) On March 24, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for

2

exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*,

336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the

reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "[Benefits] are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

5

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements through December 31, 2001, and had not engaged in substantial gainful activity during the period at issue. (Tr. at 599.) At step two, the ALJ found that Plaintiff's degenerative disc disease and degenerative joint disease were "severe" within the meaning of the second sequential step. (Tr. at 599-600.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 600.) At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (Tr. at 602.) At step five, the ALJ found that Plaintiff could

perform a limited range of light work. (Tr. at 601-03.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 603-04.)

   E.   **Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff sought treatment for severe lower back pain since 1996 when he injured his back while lifting a plank. (Tr. at 144, 231.) At that time, x-rays revealed "minimal narrowing of the L-5/S-1 disc space, . . . no facet degenerative changes or pars defects, . . . [and] no fractural or destructive change." (Tr. at 145.) A CT scan taken at this time revealed "left paramedian L-5/S-1 hard disc which may contact the left S-1 nerve root . . . [and] multilevel facet degenerative changes." (Tr. at 151.) Also in 1996, Plaintiff participated in physical therapy for a brief time but cancelled therapy because he was having further testing done. (Tr. at 146-50.)

After conservative treatment measures failed to ease his left leg pain, Plaintiff underwent surgery by Dr. Mark Jones to "remove the disk at L5-S1 on the left" in January 1997. (Tr. at 152-55.) Plaintiff was discharged in stable condition but reported "some subjective numbness in the top and bottom of the foot, but no sensory loss to pinprick, weakness, or focal neurologic change." (Tr. at 152.) Plaintiff also participated in physical therapy in 1997. (Tr. at 200, 209.)

In July 1997, Plaintiff was still experiencing "a lot of trouble with the back." (Tr. at 205.) In October 1997, Plaintiff continued to report left leg pain and numbness on the plantar surface of his left foot. (Tr. at 163.) Plaintiff also reported continuing neck pain and soreness in November 1997. (Tr. at 199.) Around this time, Dr. Jones opined that Plaintiff's continuing symptoms were due to "lumbar radiculopathy, possible scar tissue related," and "possible sacroiliac joint dysfunction." (Tr. at 164.) Dr. Jones recommended epidural injections. (*Id.*) L. Madala. M.D., agreed with Dr. Jones's recommendation and gave Plaintiff a "lumbar epidural steroid injection

and left sacroiliac joint injection" on December 17 and 20, 1997. (Tr. at 167-68, 170.) Dr. Jones continued to see Plaintiff and continued to note that Plaintiff did not exhibit any significant changes neurologically after surgery in 1997. (Tr. at 237-53.)

In May, September, October, November, and December of 1998, Richard Hall, D.O., noted that Plaintiff was also having "a lot of trouble" with his shoulder and neck, so he continued to prescribe pain medications. (Tr. at 182, 184, 188, 191.) In September and October of 1999, Dr. Hall noted that Plaintiff continued to have symptoms (pain, soreness, numbness, and burning) and recommended herbal whirlpool baths and a continuation of pain medication, i.e., Valium and Percodan. (Tr. at 171, 175.) Plaintiff continued to see Dr. Hall for pain management through prescription drug treatment during the relevant time period in this case. (Tr. at 348, 351, 354, 360, 362, 368, 373, 375, 380, 383, 385, 387, 389, 395.)

In October 1999, an MRI showed "no evidence of recurrent disc herniation" and "[r]esolving postoperative changes . . . at the L5-S1 level." (Tr. at 258.)

In February 2000, Plaintiff consulted Saeed Farhat, M.D., at the University of Michigan Medical Center. (Tr. at 231.) Dr. Farhat examined Plaintiff's MRI and concluded that there was "no evidence of recurrent disc" problems. He suggested that, because Plaintiff's pain was of the "dysesthetic-type," Plaintiff might obtain some pain relief through a series of three sympathetic blocks or, if that were not successful, a possible lumbar sympathectomy. (Tr. at 231-32.)

In July 2000, Plaintiff was examined by Michael Sperl, M.D., who performed a functional capacity exam. Dr. Sperl noted:

> Mr. Rife presents today with symptoms, complaints and findings of a post laminectomy syndrome which he dates specifically to this work incident described in May 1996.
>
> Mr. Rife has presently reached maximum medical improvement and, as such, I do not feel that any type of additional surgery, any type of manipulation, therapy,

> testing, injections and/or formal intervention would significantly alter his present status. There would be little else to offer the patient from a treatment standpoint other than conservative modalities entailing exercises, heat, anti-inflammatories as well as range of motion activities to tolerance.
>
> From a functional/vocational standpoint the patient is limited. I do not feel that he could perform his unrestricted employment activities as a carpenter. The patient does require physical restrictions and limitations specifically in terms of avoiding repetitive bending, twisting, as well as lifting of weights no greater than 20 to 25 pounds repetitively. Repetition would imply a frequency of no greater than six to ten times per hour. The patient would be able to lift maximum 25 pounds, continuously 10 to 15 pounds. I would not limit the patient in terms of sitting and/or driving. I would not limit the patient in terms of walking. He should, however, be limited specifically in terms of ladder climbing due to safety concerns. From a clinical standpoint, the patient does present with a number of limitations consistent with his prior surgery, however, he has not physiologically lost the utilization of either lower extremity.

(Tr. at 234-35.) In October 2000, Dr. Jones concurred in the evaluation made by Dr. Sperl, indicating that the occupational therapist could now make the final recommendations. (Tr. at 236.)

In March 2001, Hastings Mutual Insurance Company wrote to Dr. Hall regarding "[s]everal attempts made by Mr. John Stokes, a vocational counselor with Brown Rehabilitation, to return Mr. Rife to appropriate and reasonable work. Unfortunately, Mr. Rife had quite an attractive job offer that he had to turn down because of his inability to drive while on the various medications he is on." (Tr. at 346.) The letter also noted that Dr. Sperl had testified at the first administrative hearing that "long term use of Percodan would result in Mr. Rife continuing to need more and more of the drug in order for it to be effective," so the letter asked Dr. Hall to "consider weaning Mr. Rife from the Percodan for the obvious reasons as well as allowing him the opportunity to become a working, productive, member of society again." (Tr. at 346.)

In May 2001, Plaintiff underwent an Independent Medical Examination ("IME") by Maynard C. Buszek, M.D. (Tr. at 336-40.) Dr. Buszek reported:

> There are significant pain complaints during the course of the examination, some of which are occurring without physical stresses on the back. The degree of the current

> complaints do not seem to corroborate with what was described on the MRI. Chronic use of Percodan and Valium to the level that he is describing certainly can lower the pain threshold and increase pain perception. It would be in his best interest to be weaned and discontinued from these agents. It may take up to four or five weeks after discontinuation before any impact on his symptomatology may be noted. Certainly, use of nonnarcotic analgesics, including anti-inflammatory agents, could be of some symptomatic benefit . . . .
>
> In summary, Mr. Rife has chronic pain complaints, not all of which are correlating with the objective imaging study and clinical findings. It would not be anticipated that attempts at physical interventions would significantly and positively impact the nonspecific complaints. It would be appropriate that he avoid lifting repetitively below the level of the knees, lifting in excess of a range of 20-25 pounds and avoidance of remaining in one position for more than 25-30 minutes. Functional testing at this point in time would be dependent upon production of full effort. Given the way effort for motor testing, the functional capacity evaluation simply has shown a reflection on his performance rather than true capabilities.

(Tr. at 339.)

In June 2001, a nurse consultant from Hastings Mutual Insurance Company sent a copy of the above IME to Dr. Hall and reiterated in her letter that, "[p]erhaps you will want to give some consideration to Dr. Buszek's recommendation with regard to weaning and discontinuing Mr. Rife's narcotic medications and replacing them with some type of non-narcotic analgesic." (Tr. at 335.)

In August 2001, Dr. Hall informed the insurance carrier that Plaintiff continued to have the same restrictions as indicated in the functional capacity examination by Dr. Sperl above. (Tr. at 329.) On December 7, 2001, Dr. Hall opined that Plaintiff is permanently and totally disabled. (Tr. at 310.)

A Physical Residual Functional Capacity ("RFC") Assessment conducted in 2003 concluded that Plaintiff is able to occasionally lift 10 pounds, frequently lift 10 pounds, stand or walk for at least 2 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and is unlimited in his ability to push or pull. (Tr. at 400.) The assessment also found that Plaintiff is occasionally

10

limited in all the postural areas except that he is frequently limited in balancing. (Tr. at 401.) No manipulative, visual, communicative, or environmental limitations were found. (Tr. at 402-03.) The assessment noted that Dr. Hall found Plaintiff totally disabled in December 2001. (Tr. at 405.)

Plaintiff indicated in his daily activity report in 2003 that he does laundry, washes dishes, and vacuums weekly, that he prepares his own microwave meals, and that he shops for food and clothing on a monthly basis. (Tr. at 113.) Plaintiff indicated that he drives a car, watches television, listens to the radio, goes for walks (for up to 15 minutes), to movies, fishes, and hunts for two days of the season. (Tr. at 114, 121.) Plaintiff also visits with family for a couple of days at a time about once every two months. (Tr. at 115.) Plaintiff indicated that he takes Percodan, Valium, and Oxycodone for pain and Elavil for depression. (Tr. at 127.)

At the relevant October 9, 2007, administrative hearing, the ALJ noted that she needed to focus on the time period before December 31, 2001. (Tr. at 565.) Medical expert Mary Jo Fosinski testified at this hearing. (Tr. at 577-86.) The ALJ asked the vocational expert ("VE") to assume a person of Plaintiff's background who:

> cannot lift, carry, push or pull more than 10 pounds frequently, and no more than 20 pounds occasionally. With respect to sitting, standing, and walking, the person should be able to alternate position for a few minutes approximately every twenty minutes. The person should not climb ladders, ropes, or scaffolds, and should not need to run or jump. Should avoid twisting movements of the back. Assume a person limited to occasionally climbing stairs, and then with railings. Assume a person who can occasionally stoop, occasionally crouch. Assume a person should not need to reach overhead with the left arm. It's the non-dominant arm. Assume a person who should not be exposed to hazards or to vibration. Should not have to operate foot or leg controls. The person should not be exposed to extremes of temperature or humidity, or need to drive as a work duty.

(Tr. at 587-88.) The VE responded that such a person could not perform Plaintiff's past relevant work but could perform jobs in the light unskilled category that exist in the lower peninsula of Michigan such as assembler (9,000), inspector (4,700), and packer (2,300). (Tr. at 588.) The ALJ

11

then asked the VE to assume that person could not lift, carry, push or pull more than 5 pounds frequently, and no more than 10 pounds occasionally, and the VE responded that such a person could not perform the earlier mentioned jobs but could perform jobs in the sedentary unskilled category such as cashier (10,000,) security monitor (1,000), and inspector (2,100). (Tr. at 589.) The VE further indicated that a person in these jobs would be allowed to sit or stand as desired but would not be able to lie down. (Tr. at 590.) Finally, the VE testified that her testimony was consistent with the Dictionary of Occupational Titles (DOT). (*Id.*)

F.   **Analysis and Conclusions**

1.   **Legal Standards**

The ALJ determined that during the time he qualified for benefits, Plaintiff possessed the residual functional capacity to perform a limited range of light work. (Tr. at 603.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

2.   **Substantial Evidence**

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 14.) As noted earlier, if the Commissioner's decision is supported by substantial evidence,

12

the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ failed to give proper weight to Plaintiff's treating physician, Dr. Richard Hall. (Doc. 14 at 7-10.) In addition, Plaintiff contends that the ALJ failed to give sufficient reasons for finding that Plaintiff's claim of disabling pain were not fully credible. (Doc. 14 at 11-13.)

### a. Weight given to treating source opinions

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence

in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

I note at the outset that Dr. Hall's conclusion that Plaintiff is disabled (Tr. at 310) is not entitled to any deference since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner." *Kidd v. Commissioner*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Commissioner*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008). I further suggest that the ALJ's decision to not give controlling weight to Dr. Hall's underlying opinions was proper because it was

not well-supported and was inconsistent with other substantial evidence in the record. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).

After surgery in 1997, Dr. Jones opined that Plaintiff's continuing symptoms were due to "lumbar radiculopathy, possible scar tissue related" and "possible sacroiliac joint dysfunction." (Tr. at 164.) Dr. Jones recommended epidural injections. (*Id.*) Dr. Madala agreed with Dr. Jones's recommendation and gave Plaintiff a "lumbar epidural steroid injection and left sacroiliac joint injection" on December 17 and 20, 1997. (Tr. at 167-68, 170.) Dr. Jones noted that Plaintiff did not exhibit any significant changes neurologically after surgery in 1997. (Tr. at 237-53.) Further objective tests did not support a disabling condition or Dr. Hall's course of narcotic treatment. An MRI taken in 1999 showed "no evidence of recurrent disc herniation" and "[r]esolving postoperative changes . . . present at the L5-S1 level." (Tr. at 258.) Dr. Farhat concluded that there was "no evidence of recurrent disc." (Tr. at 231-32.) Dr. Sperl noted in 2000 that Plaintiff had "reached maximum medical improvement" and should focus on "conservative modalities entailing exercises, heat, anti-inflammatories as well as range of motion activities to tolerance." Dr. Sperl recommended no limitation in sitting or walking and expressed that Plaintiff remained able to use both lower extremities. (Tr. at 234-35.) Finally, Dr. Hall's credibility is undermined by his failure to heed the requests by Dr. Buszek and the insurance carrier that he wean Plaintiff from narcotic pain medication and replace them with analgesic pain medicines. (Tr. at 335, 339, 346.)

I therefore conclude that the ALJ properly discounted those portions of Dr. Hall's opinions that pointed to a disabling condition.

### b. Plaintiff's credibility regarding subjective complaints of pain

Social Security Regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must

15

be objective medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

After examining the record evidence, I suggest that substantial evidence supports the ALJ's findings, including the finding that Plaintiff's testimony regarding his level of pain was not fully credible. Although not without discomfort after the surgery in 1997, there is no objective medical evidence that would support Plaintiff's complaints of disabling pain. Dr. Jones noted that Plaintiff

did not exhibit any significant changes neurologically after surgery in 1997. (Tr. at 237-53.) In October 1999, an MRI showed "no evidence of recurrent disc herniation" and "[r]esolving postoperative changes . . . at the L5-S1 level." (Tr. at 258.) Dr. Farhat concluded that there was "no evidence of recurrent disc." (Tr. at 231-32.) In May 2001, Dr. Buszek indicated that Plaintiff's "chronic pain complaints [did] not all [] correlat[e] with the objective imaging study and clinical findings." (Tr. at 339.) I therefore suggest that the ALJ's decision to discount Plaintiff's subjective complaints of pain was supported by substantial evidence.

I further suggest that the ALJ's findings follow the opinions of the vocational expert, which came in response to detailed and proper hypothetical questions that accurately portrayed Plaintiff's individual impairments in harmony with the relevant objective record medical evidence and with Plaintiff's own statements that he does laundry, washes dishes, vacuums, prepares his own meals, shops for food and clothing, drives a car, watches television, listens to the radio, goes for walks (for up to 15 minutes), goes to movies, fishes, and hunts for two days of the season. (Tr. at 113, 114, 121.)

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).

17

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  |  |
|---|---|
| Dated: November 10, 2010 | s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗<br>CHARLES E. BINDER<br>United States Magistrate Judge |

**CERTIFICATION**
I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: November 10, 2010      By      s/Patricia T. Morris
                                                    Law Clerk to Magistrate Judge Binder